Case number 23-1404, United States of America v. David Jankowski, M.D. Argument is not to exceed 15 minutes per side. Mr. Chapman, you may proceed for the appellant. Thank you. Good morning, and may it please the court, Ronald Chapman, on behalf of David Jankowski, I would like to reserve five minutes for my rebuttal argument. All right. I'd like to present three issues to the court. They were more briefed, but I'd like to focus on these. First, the court allowed the undercover video of a confidential informant into evidence that was interpreted by an FBI agent in violation of Dr. David Jankowski's confrontation rights. Dr. Jankowski's counsel at the time failed to object to that video, so this is reviewed under plain error, which the government did ask for in this case. However, courts have routinely found that it is plain error to admit the hearsay statement of a confidential informant, and we cite Cromer for that effect. The second issue is that Medicare claims were not introduced into evidence at trial in this case, and it's vital in a healthcare fraud case that the government introduce the actual Medicare claims in order to show that those claims were false. Dr. Jankowski was tried primarily by summary charts, for which there was not a proper foundation laid for the underlying data, but we do not make a bray issue here, Your Honor, primarily. This is mostly related to the requirement that the government show the claim and show the fraudulent claim in order to proceed in their case in chief. The evidence that was summarized in the Rule 1006 summary were in fact those claims, right? That is unclear because there was not a proper foundation laid for that, Your Honor. But I thought in this case that when the judge ruled on some of these objections, the judge said, yeah, I agree that the rule requires the underlying data to be presented, and defendant, you can present it if you want to. And you didn't present it. Now, I know it's not your burden to prove the government's case. I get that. Dr. Jankowski's counsel at the time did not present that information. However, it was incumbent upon the government in order to satisfy the elements of healthcare fraud to present that information. So we are not simply saying that the summary charts were improperly admitted. We believe that to be true, but the crux of our argument is that healthcare fraud cannot be satisfied absent the claims. The other concern with respect to the claims, Your Honor, is there is SRS data, the proprietary billing software that was used primarily to create the data that the government presented. The problem with presenting that type of data is, as I'm sure we all know, when claims are submitted to a healthcare entity, some of them are denied. Some of them are perhaps not submitted, and some are not paid out. And as a result of that, the billing data is insufficient to show that there were claims submitted to a healthcare program. The third issue is one that was very new at the time of this case, and that is the elements of an 841 case against a physician, which was decided by the Supreme Court in Ruan v. United States in 2022. In fact, Ruan's decision had just come out, I believe, days before the jury conference in this case, and it was new territory for everybody. Both sides submitted instructions, and the court reviewed them, but ultimately the court failed to instruct the jury on an essential element of the offense, and that is outside the usual course of professional practice or other than a legitimate medical purpose. The crux of Ruan was whether or not a physician could be convicted for subjectively or objectively violating a rule, whether they had a subjective belief that they violated a rule. And in this case, we are unclear in reviewing the jury instructions whether Dr. Jankowski was held to a subjective standard, meaning that he personally knew that he violated the rule, which was the requirement of Ruan, or some sort of objective standard. As a result of that, the jury was instructed inappropriately, and we have no idea why the jury decided to convict or what standard Dr. Jankowski was convicted under. Again, defense counsel? Are you talking about the jury instruction wherein the phrase outside the usual course of professional practice and for no legitimate medical purpose, that that wasn't sufficiently defined? Is that what you're referring to? Yes, Your Honor. The Sixth Circuit instruction goes much further to define outside the usual course of professional practice for other than a legitimate medical purpose. Well, don't you have a problem there in that your client or counsel invited an error because you requested that jury instruction that you're now challenging or disputing? We recognize that issue, Your Honor. We do believe that defense counsel submitted an instruction that was inappropriate. The concern for us is that at the time, Ruan had just come out, and there was certainly a significant amount of flux in this territory in order to understand how to properly instruct a jury under the standard. We do understand that defense counsel did submit an instruction that omitted that definition herself. However, it's still incumbent upon the court to properly instruct the jury of all elements of the offense. Plain error would also apply to that question, wouldn't it? It would as well, Your Honor. So how can the error be plain when you give the defendant's proposed instructions over the at least initial objection of the government? We still believe that the case law supports that it's incumbent upon the court to define the essential elements to the jury in order for them to properly convict. I'd like to get back to the video, which I believe is the area of most concern. In this case, Henderson Butler, a paid confidential informant who was previously cross-examined in a case, United States v. Bothra, that led to a full 56-count acquittal, the government prevented him from taking the stand in this case after that cross-examination in order to submit his video, his undercover video, into evidence in this case and not allow him to be cross-examined. So how did the government prevent him from being cross-examined? They did not call him as a witness to lay a foundation for his undercover operations. Did you call him? I wasn't defense counsel in the case, Your Honor, but I can tell you that defense counsel was unaware of his prior cross-examination, unaware of some of the Brady material that had come out during that cross-examination, and because the government decided not to put him on the stand, that information was not produced to defense counsel in order for them to understand that they may be able to examine Mr. Henderson Butler in a way that would be helpful for the case. Was he on the government's witness list? I do not know, Your Honor. Well, let's assume for a second that he was on the government's witness list and that they just chose for whatever reason not to call him. Is your argument the same then? My argument would be the same. It is incumbent upon the government to lay a foundation for the video evidence that includes Henderson Butler's statements. Sixth Circuit precedent is abundantly clear in McGee, in Bennett, I believe, as well as Cromer, that a confidential informant's statements would be considered testimonial and would be required, Henderson Butler would have been required to take the witness stand and testify in order to introduce those statements. Even more so, problem was there an objection to the introduction of these tapes without him having testified to authenticate them? Again, Your Honor, I do not believe defense counsel objected, and we are in a plain error situation there. So what makes that error plain, the cases that you just cited? In Cromer, this court found that there was plain error in that case. In fact, in Cromer, the defendant represented himself largely. He did have standby counsel, and he failed to object to, I believe, some statements made by an officer on the stand that related to a confidential informant's identification. This court found that there was plain error in that case and reversed Mr. Cromer's conviction as a result of that. We have a very similar case, but this is even more problematic. Wait a minute. These statements were not offered for the truth of the matter asserted. And if the statements were by a party opponent or employees and a party opponent and were not hearsay, we look at them based upon different standards, and the special agent who testified about this subject matter did, the special agent involved with this subject matter did testify at trial, which means he was available for cross-examination. So aren't you leaving out some facts about this whole matter? No, Your Honor, we don't believe so, and I'm happy to cover those areas. First, the special agent was not in the videos, and I don't even believe he was the handler of this confidential informant. This confidential informant went into a medical clinic multiple times and interacted with physician assistants, with a physician, with front desk staff, made many statements to those individuals, and also statements of people in the waiting room and in the lobby were included. The concept that a confidential informant's statements in an undercover recording are not for the truth of the matter asserted has not been determined in the Sixth Circuit. Okay, but in any event, what statements were made by the confidential informant that were offered for the truth of the matter asserted in those statements? In this case, the truth of the matter asserted would be the truth of the matter asserted in the statements. The statements were captured on an undercover video. So the truth of the matter asserted is... Yes, but I'm asking specifically what are the statements that were offered for the truth of the matter asserted by the confidential informant? I believe these videos were hours long with Mr. Butler making many statements, but there were questions about his medical condition, there were questions about his compliance on controlled... Medical condition. His medical condition. As a confidential informant. As a confidential informant. Okay. Those would not be statements for the purpose of medical diagnosis or treatment because he was an undercover officer or undercover confidential informant acting in an undercover capacity. In this case, those statements are used against the defendant and they are for the truth of the matter asserted because those statements and the statements of the employees are being used against the defendant in this case. Well, no. The confidential informant's medical condition was not at issue, even if that was the purported reason for treatment or for asking for whatever medical guidance he was purportedly receiving from Dr. Jankowski. I'm not aware of a single case, Your Honor, that has determined that the undercover statements of a confidential informant would be not for the truth of the matter asserted when introduced at trial against the defendant. Those are clearly testimonial statements as well as the statements of others. I'd like to address the, if I may, I'm out of time. He's talking about the events that occurred pertaining to the alleged infraction. There's not a reference to proving the underlying, the truth of the underlying matter referred to in the statements. So we're, you know, you and I are off on two different courses here as to whether the statements are germane in the way that you're arguing that they are. Some may say that these statements are not for the truth because they're in order to determine the reaction by the defendant. And the concern with that approach is that here— Or to show the background information pertaining to the behavior of the defendant. And the case that cites that, I believe, is Harrison, which is included in our brief. In Harrison, the government, in order to get around that fact, omitted large portions of what the confidential informant said and focused on the defendant's statements. Here we have the confidential informant making contact with a whole range of individuals. The agency exception would not apply. That would gut the confrontation clause if we determined that any recording with any employee of any organization could be used against the owners or principals of that organization in cases going forward. That would be bad precedent by this Court and subject corporations to significant undercover operations without the ability to cross-examine. And you don't think that any prejudice to your client was mitigated by the fact that the agent who was involved with these matters we're discussing testified at trial and was available for cross-examination? No, Your Honor. Here are the things that the agent could not be cross-examined on. Henderson Butler, we found, and we've cited the case in the record, was engaging in illicit drug activity while he was a confidential informant. That could not be something we cross-examined the agent on. Henderson Butler used illegal drugs while he was working as an undercover informant with knowledge by the FBI and DEA. That's not something we could cross-examine him on. He was paid, I believe, over $83,000 for his operations. That's not something we could have cross-examined the agent on. Why not? Because the agent was unaware of that information because he hadn't worked in those operations, Your Honor. And because he didn't... That wasn't established through his testimony when he was available to testify, was it? Because the agent... Because Henderson Butler was not called to testify in the case, the government never had to produce the payment that was made to him in furtherance of the undercover operation. And with that, I'm out of time. I'll reserve the rest for rebuttal. Thank you.  Good morning. May it please the court, Megan Bean on behalf of the United States. This court should affirm the district court's judgment. I'll start where the court left off, and that's with the undercover recording. And Judge Clay, your questions, I think, are exactly right because to violate the Confrontation Clause, a statement must be both testimonial and offer for the truth of the matter asserted. And with respect to Butler's statements here, the problem with Jankowski's argument is that Butler's statements were not offered for their truth. And that's evident from reviewing the statements that Jankowski challenges in his opening brief. And the overarching thing with Henderson Butler was he was a fake patient. The case agent testified that they had him go in and raise objective red flags to see what the response would be. Therefore, none of what he was saying was offered for its truth. In fact, much of it wasn't true at all. The purpose of his statements was to show the effect that they would have on Jankowski's employees, whether they would discharge him, whether they would continue to prescribe to him, despite his drug-seeking behavior. It was not offered for the fact that he had back pain, for the fact that he was taking a particular type of drug. So because his statements were not offered for their truth, they also did not violate the Confrontation Clause. Now I want to respond to something that Mr. Chapman mentioned. I believe, Judge McKee, you asked him was Butler available on the witness list, and he said he didn't know. But in footnote 4 of his opening brief, he says Butler was on the initial witness list. Butler was not hidden. There was no Confrontation Clause violation. The government was under no obligation to call him just because he was on the witness list. But Jankowski certainly could have done so, yet his counsel did not. I'd like to turn to you. Before you leave that issue, what the defendant seems to be relying upon today in this Confrontation Clause issue is really whatever the holding in United States v. Cromer stands for. It's cited twice, almost at the end of their brief, on page 51 of the opening brief, and it's not discussed by you in the response brief. Yes. So it's a pretty sweeping description of what Cromer says. And I didn't bring that with me, so I don't know whether that's accurate or not. But do you agree that Cromer says that an undercover informant's testimony is considered testimonial? That's the fundamental question. Yes, it's testimonial, but not necessarily for the truth of the matter. So you're not disputing Cromer's holding that this was testimonial? I'm not. But you're saying Cromer doesn't say you have to call the CI if what the CI is testifying to is not offered for the truth of the matter asserted? That's right, Your Honor, and I can speak to Cromer directly. The statement that the court in Cromer found was offered for the truth was the CI testifying that the defendant was involved in drug activity, that he was the one who was committing the crime. That's fundamentally different than the confidential patient's statements here. Turning to the sufficiency arguments, first of all, Jankowski's counsel below did not make the specific sufficiency argument that he's raising on appeal in his Rule 29 motion, so he's waived that argument. And the reason that she didn't do that makes perfect sense. That's because Jankowski's trial counsel requested and later identified and ultimately admitted the claims information that he says is missing. And there was extensive discussion about this in the record. It takes a bit of an indirect path to see that. I've set it out in my briefs. There's an extensive discussion about whether the underlying claims information has to be admitted under Rule 1006. The parties talk about it with the court for two days. On the second day, and this was at page 2491 and 92 of the record, and then you see again at 20, 38, and 39, that they ultimately determined the underlying claims information isn't necessary under Rule 1006, but the government says, if you want it, go ahead and admit it. We're not going to object. And that's exactly what happened. Later at page 1402 of the record, defense counsel introduces, she calls it Defense Exhibit A. She references the parties' agreement that had happened on the record before the court, and the court says that's fine. At that point, all of the parties understood that the claims information had been admitted, and in fact it went to the jury, renumbered as Defense Exhibit 31. You can see that on page 5267 of the record. The government supplemented the record in order to make clear that this claim, its information went to the jury at the request of Jankowski's trial counsel. But even setting that aside, there was more than sufficient evidence in the record to show that the fraudulent claims had been billed to Medicare. Your Honor referenced the summary exhibits, 118 through 120, but that wasn't all. An auditor, Scott O'Connell, testified, and he was shown a demonstrative slide that included each of the substantive health care fraud counts charged in the indictment. And O'Connell told the jury that he had access to the Medicare claims data, that he reviewed the Medicare claims submitted for each, and that it went to Medicare under Jankowski's MPI number. So all of the argument about the claims information aside, that alone was sufficient to prove that fraudulent Medicare claims had been billed. Now, finally, I would like to turn to the jury instruction. Your Honor's questions, again, track the government's argument, which is first that Jankowski waived his challenge to the jury instruction. The main issue seems to be that there's a Supreme Court precedent that came down, it was intervening, and something should have happened. For the jury instruction? Yes, but the Supreme Court decision came out before the parties negotiated the jury instructions. Was there an obligation on the district court to do anything in that circumstance? Neither parties raised the issue to the district court? I mean, I think the parties were negotiating and ultimately put on the record that they used what the instruction Jankowski wanted to avoid any issue. The district court went with that instruction. The government even said it gave up some language it would have liked in its instruction in favor of Jankowski. So he waived that, and the district court found as much when Jankowski attempted to challenge the instruction in his Rule 29 motion. But if the court were to review it under plain error, the instruction that was given complied with the law. In fact, it defined the term unauthorized almost identically to the pattern instruction that is on the books now, but of course was not on the books at the time of Jankowski's trial. And it defined the term unauthorized as outside the course of professional practice and for no legitimate medical purpose. Now the pattern instruction now goes a step further, further defining that to mean an accepted standard of practice in the field in which the individual practices. But that was substantially captured by the instruction that was given. It explains that this was an objective standard of practice or an accepted standard is how it referred to it. And that's really all that is required post-Bruant. Let's go back just a step. Under plain error, there has to be an error, obviously. So is it your position that invited error applies here, or is it also your position that the instruction turned out to be accurate, correct, even taking the very recent Supreme Court decision into account? Yes, so my position is first that it's waived. If it's not waived, it's at least invited error. But even if this court reviews it under the plain error standard, the position is it was an error. It did comport with the then very recent decision in Rouen. So there was no error under Rouen is your ultimate position.  Okay, thank you.  But because, I guess, at best case for Jankowski, this would be reviewed under plain error, regardless, he can't show prejudice. And that's because, regardless of this standard was a standard in the United States, I think he says, was it in the United States? Was it in Michigan? Regardless, his prescribing was so far out of bounds that under any standard, the outcome of the proceedings wouldn't have changed. For example, there was testimony from a known drug dealer who said, Jankowski prescribed drugs to me, that's Ali Bazzi, despite that he knew I'm a known drug dealer and that I was selling drugs on the street. Jankowski's own expert on the stand told the jury that prescribing to a known drug dealer falls outside the scope of legitimate medical practice. Similarly, Hassan Hamdan, Jankowski's co-conspirator and co-defendant testified, and he laid out both drug and the healthcare fraud conspiracies. He told the jury that he was unlicensed to practice. Jankowski knew that he did not have a medical license. However, Jankowski allowed him to go into patients' homes and prescribe them dangerous, very dangerous opioids without any medical supervision. Again, Jankowski's own expert, Dr. Nabadi on the stand, told the jury that allowing an unlicensed individual to prescribe falls outside the course of legitimate medical practice. So even if this court were to believe there were error, and the government's position is that there was not, he would still fail at step three on plain error review. If this court does not have any further questions about the other issues, I would rest on my brief and ask that you affirm the district court's judgment. Thank you. Thank you. Arnold. Thank you. Dr. Jankowski ran a practice and saw over 5,000 patients with 72 employees. At trial, the government shared 20 charts, one of them related to a confidential undercover informant, Henderson Butler, who was the only informant who went into the practice. The government made no effort to extrapolate those findings over the larger practice, and in addition, as you'll see in our brief, in the forfeiture phase and the sentencing phase, the government then attempted to take all monies received. In fact, they did take all monies received from an entire group practice owned by three physicians, despite the fact that Dr. Jankowski was only one physician there. Did you make this argument in your opening? In the opening brief or earlier? No, I'm going to tie that to the claims issue, Your Honor, but that is. We ask that you, if you're going to rebuttal, you do something, you know, because the government doesn't get a chance to respond to what you're saying, but. I understand. I just want to make sure. If you can tie it together, that's great. I appreciate that. And the reason I wanted to mention that is because when tying that to the. We have a little bit of a problem in that at trial, you didn't make an argument about the sufficiency of the evidence at the close of the prosecution's case, nor at the close of the submission of all the evidence. A lot of the arguments you're making here go to the sufficiency of the evidence. No Rule 29 motion was made by you at trial or whoever was the trial attorney? There was a Rule 29 motion made by trial counsel. That's my understanding, Your Honor. I believe the government indicates in their brief that the issue was waived because we didn't present this specific issue related to sufficiency of evidence. However, if you'll read the next line as we cite in our reply brief, after the line that the government provides, you will see that we had an overall sufficiency of the evidence Rule 29 argument for Dr. Jankowski. The government cites cases that basically say you can make a very general Rule 29 argument, but if you choose to specify Rule 29 reasons, then you're held to those, and you can't then expand it to include other arguments on appeal. Are the cases that the government cites for that proposition correct? We have traced that case law, Your Honor, and we believe that it stems from a fundamental misunderstanding in the case law, and I apologize, they don't have the specific cites for you today, but it does appear that in... The question wasn't whether the cases are right or wrong. The question was, is the government right that that's what the cases say? No, Your Honor. We believe when this is thoroughly reviewed, that when the defendant makes an overall sufficiency of the evidence challenge related to a specific count, then that is the challenge, and other arguments underneath sufficiency of evidence would be absolutely fine to make. I believe the case that the government primarily relies on, although I can't find the name, is when a defendant makes a very specific non-sufficiency argument, and then attempts to say that they've preserved their sufficiency argument. So perhaps... One reason I'm interested in this is that, back from the standpoint of being a trial judge, the reason for the requirement to make the motion, as I understand it, on the two different occasions, is there's still time for one side or the other to do something about it. And so you have to put, in this case, the government on notice that you claim they didn't do this. I believe that at that point the government would be proper to ask to reopen the proofs, and I assume that that would be granted. So it just seems to me, unless I'm missing something here, that the whole purpose of the requirement of making the motion would be frustrated by the proposition you're advancing. It would be frustrated if the motion was for one purpose, and then we claim a sufficiency of the evidence was preserved. But if a defendant claims that the government failed to introduce sufficient evidence to satisfy the elements of the case, specific arguments to that point don't waive the larger sufficiency argument. We believe that that shakes out completely in the case law. If that were the case, every defendant on Rule 29 would probably have to take a full day and a half to go through the catalog of arguments that they would likely want to make in a lengthy trial. The last thing I will mention is... I don't understand what you're saying. What's the larger sufficiency of the evidence issue as opposed to specific issues involving whether the evidence was sufficient? Just to understand your argument. I can't quote defense counsel here, but it is cited in the brief that defense counsel did stand up and say that the government has not provided sufficient evidence on certain aspects of the case specifically related to the health care fraud. If we look at the record and we see that there was sufficient evidence with respect to your client billing under his name when he was not always present, and two, he billed for medically unnecessary procedures, and we think there's sufficient evidence to sustain both those points. What other sufficiency of evidence concerns would you want to argue? With respect to health care fraud, our main concern is the failure to introduce the claims, and it's for the reason that you point out. There is nothing improper under Medicare guidelines, and mind you, the government claims that this was Medicare fraud, but also defrauding a whole host of insurance companies. There's nothing wrong with billing for a physician's services even though that physician didn't see the patient. There's something called incident-to-billing, which is wholly appropriate in the medical field, and I do believe it's something that was- That's a coding question. Basically, the claim here is they up-coded what they were seeking reimbursement for. It is a coding question, and generally there is an instruction- And false coding can be fraud, right? It can be if it's a scheme or artifice to defraud and it's done knowingly and willfully. That is correct, Your Honor. Well, if the doctor goes to the company that does the billing for that doctor and says, bill as if I was there for every single procedure, and the jury believes that, why would that not be fraud? Well, that's not the evidence in this case, Your Honor. The evidence is that the biller and Dr. Jankowski had a conversation about how to bill for the services of mid-level providers. They followed suit with that. The biller was surprised to get a letter from Medicare that they didn't authorize that, and when that happened, they paid back money, and there's no evidence that after that occurred there were any false claims related to these mid-levels, and that is our concern with respect to sufficiency of the evidence. And with that, I am out of time. Thank you. Thank you. Thank you for your arguments, and the case is submitted. There being no further cases for argument, the court may be adjourned.